**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.C. and L.C.**

**No. 21-0348** (Pocahontas County 19-JA-19(R) and 19-JA-20(R))

**MEMORANDUM DECISION**

Petitioner Mother T.C., by counsel Carrie F. DeHaven, appeals the Circuit Court of Pocahontas County's April 2, 2021, order terminating her parental and custodial rights to C.C. and L.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joshua P. Hardy, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an extension to her improvement period and terminating her parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner's substance abuse negatively affected her ability to parent the children. The DHHR alleged that petitioner drove then eleven-year-old C.C. and twelve-year-old L.C. to school on December 12, 2019, and then "passed out" in her running vehicle on school grounds. Petitioner was arrested for driving under the influence. The DHHR alleged that petitioner admitted to a Child Protective Service ("CPS") worker and to law enforcement that she used cocaine,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Percocet, Xanax, Ritalin, and alcohol in the days leading up to her arrest. Petitioner consented to a drug screening and tested positive for marijuana, methamphetamine, amphetamine, and cocaine. The circuit court held a preliminary hearing and found the children were in imminent danger in petitioner's care.

The circuit court convened for an adjudicatory hearing in January of 2020, and petitioner stipulated that her substance abuse negatively affected her ability to parent the children. The circuit court found that petitioner's stipulation was freely, voluntarily, and intelligently made, and the court adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, which was not opposed. The circuit court granted her motion, finding that she was likely to fully participate in an improvement period. As terms of her improvement period, the circuit court ordered petitioner to complete a substance abuse treatment program and follow the recommendations of the program after completion, participate in a parental fitness evaluation, participate in supervised visitation, and participate in parenting and adult life skills classes. The circuit court also ordered petitioner to maintain financial stability, maintain suitable housing, and remain substance free throughout the improvement period.

For the next several months, petitioner either tested positive for controlled substances or failed to avail herself of random drug screening. Then, in April of 2020, petitioner entered a twenty-eight-day substance abuse treatment program. Upon her completion of that program in May of 2020, the staff recommended continued inpatient treatment. Notably, petitioner's parental fitness evaluation also recommended a long-term substance abuse treatment program. Nevertheless, petitioner decided not to follow through with the recommendations and opted for outpatient treatment.

The circuit court held a dispositional hearing in July of 2020, and petitioner moved for a post-dispositional improvement period, to which the DHHR and the guardian agreed. The circuit court granted petitioner's motion, finding that she was likely to fully participate in an improvement period because she substantially complied with the terms and conditions of her post-adjudicatory improvement period. The circuit court ordered that the terms of the post-dispositional improvement period would be substantially the same as the prior improvement period, including a requirement that petitioner attend outpatient substance abuse treatment and follow any recommendations of that program and that petitioner submit to random drug screening "more frequently than two (2) times per week."

In October of 2020, petitioner tested positive for methamphetamine, but during a multidisciplinary treatment team ("MDT") meeting, she denied using the substance. At this time, petitioner was participating in both urinalysis drug screens and a "sweat patch" to detect illicit drug use. Again, in December of 2020, petitioner tested positive for methamphetamine via the "sweat patch" testing. During an MDT meeting, petitioner again denied using the substance. She asserted that her fiancé, H.B., was using methamphetamine and suggested that she tested positive for methamphetamine through intimate or physical contact with him or from drinking his coffee. Petitioner asserted to the MDT that she would be ending her relationship with H.B. due to his substance use. In January of 2021, petitioner enrolled in a twenty-eight-day substance abuse treatment program and completed that program in February of 2021.

The circuit court held a final dispositional hearing in March of 2021 and heard testimony from the children's therapist, petitioner's parenting and adult life skills provider, the visitation supervisor, and petitioner. During her testimony, petitioner again denied that she used methamphetamine prior to the December of 2020 MDT meeting and asserted that her prior "sweat patch" drug screening results were false positives. However, petitioner admitted that she relapsed into methamphetamine use the day after the December MDT meeting. She testified that she found a bag of methamphetamine while moving out of H.B.'s home and ingested it. Petitioner had not mentioned this voluntary methamphetamine use to the MDT or the DHHR prior to her dispositional hearing testimony. The circuit court found that petitioner's continued denial of substance abuse was not plausible and her lack of honesty in dealing with her substance abuse issues "significantly interfered with the ability of the MDT to assist her in addressing those issues." The court found that petitioner had "offered no plausible explanation for her positive drug test" results that occurred in October and December of 2020. The circuit court considered that petitioner's testimony "regarding her unknowing exposure to methamphetamine" through contact with H.B. was "not credible" and found that petitioner relapsed and resumed her abuse of methamphetamine in or before October of 2020.

The circuit court also found that petitioner's "lack of knowledge as to any use of methamphetamine by [H.B.] [was] not credible." The court noted that petitioner had been involved with H.B. for three years and was engaged to marry him after she completed her first twenty-eight-day substance abuse treatment in mid-2020. The court found that, despite her assertion that she would be "severing her ties" with H.B. in December of 2020, petitioner continued to "cook meals" for H.B., clean his home, perform bookkeeping work for his business, and care for his minor relatives. Further, petitioner continued to discuss H.B. with the children and requested that L.C. contact H.B. and "obtain certain items from him." The court found that, even if petitioner had only recently come to identify H.B. "as an unsuitable influence in her children's lives, as she claims, she thereafter continued to involve him" in their lives.

Finally, the circuit court heard evidence about petitioner's relationship with L.C. and petitioner's lack of progress during family therapy and parenting classes. According to the children's therapist, petitioner's interaction with L.C. was "contentious and argumentative" and "little progress was made in addressing the difficulties in their relationship." The therapist opined that additional family therapy was unlikely to lead to further progress in the relationship. During a supervised visitation in December of 2020, petitioner called L.C. "ungrateful" and "ignorant," which the court found indicated her failure to internalize appropriate parenting skills.

Ultimately, the circuit court found that petitioner had consistently failed to accept responsibility for her parenting deficiencies and blamed others for her failure to remedy those deficiencies. Petitioner failed to acknowledge the scope of her substance abuse problem and the need for her to make changes to address that problem. The circuit court further found that the children had been in foster care for fifteen months, due in part to petitioner's resistance to seeking substance abuse treatment until April of 2020. Due to petitioner's continued substance abuse, she "ha[d] not reached a stage in her recovery where the children [could] safely be entrusted to her care." The circuit court found that petitioner had not demonstrated that she was likely to fully participate in a further improvement period, "[p]articularly given [petitioner's] lack of candor with the [c]ourt and with the MDT." The circuit court also considered petitioner's

contention that the COVID-19 pandemic and subsequent restrictions hindered her ability to participate in services, finding that "the primary cause of any delay or interference . . . was [petitioner's] own refusal to acknowledge fully and address appropriately her substance abuse problems" at the outset of the proceedings and following her relapse in October of 2020. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future and concluded that termination of her parental and custodial rights was necessary for the welfare of the children. Accordingly, the circuit court entered its April 2, 2021, order, terminating petitioner's parental and custodial rights. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her improvement period after fourteen months. She asserts that she "should have been allowed the maximum time" to improve and argues that the court should have granted her a three-month extension to her improvement period. We find petitioner is entitled to no relief.

Pursuant to West Virginia Code § 49-4-610(6), a circuit court may extend a post-dispositional improvement period for three months upon finding that the parent "has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child[ren]; and that the extension is otherwise consistent with the best interest of the child[ren]." Here, the circuit court found that petitioner was not likely to fully participate in the terms of an improvement period, and this finding is support by the record on appeal. Most

---

[2]The children's father is deceased. According to the parties, the circuit court approved the siblings to be separated and the permanency plan for the children is adoption in their respective placements.

notably, the circuit court found that petitioner continued to abuse controlled substances from October 2020 through December of 2020 and was not truthful with the court or the MDT about that abuse. On appeal, petitioner challenges the circuit court's finding, arguing that she provided negative urinalysis drug screens contemporaneously with the "sweat patch" positive results. She further argues that the circuit court should have given her the benefit of the doubt based on the number of her urinalysis drug screens that returned negative results. Petitioner contends, without any evidentiary support, that the urinalysis drug screening results are "more reliable" than the "sweat patch" results. It is clear from the record that the circuit court heard this evidence below and found that petitioner had offered "no plausible explanation" for her positive drug screen results, and we agree with the court's assessment.

Furthermore, petitioner fails to acknowledge that she had already reached the statutory time limit for improvement periods. Pursuant to West Virginia Code § 49-4-610(9),

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child[ren]'s best interests to extend the time limits contained in this paragraph.

At the time of the March 2021 dispositional hearing, the children had already been in foster care for fifteen months. Thus, any extension to petitioner's improvement period would only be permissible if it would be in the children's best interests. As the circuit court made clear, petitioner had failed to maintain sobriety, failed to internalize proper parenting skills, and failed to reach a stage in her recovery where the children could safely be entrusted to her care. After fifteen months of services and petitioner's multiple attempts to remedy the conditions of neglect and abuse, the court found that she had not managed to do so at the time of the March 2021 dispositional hearing.

> Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Accordingly, we find no error in the circuit court's denial of petitioner's motion for an extension of her improvement period.

Finally, we note that petitioner implicitly argues that the circuit court's termination of her parental and custodial rights was erroneous. However, petitioner's brief on appeal is inadequate in regard to this argument, both in terms of complying with this Court's rules and in terms of

attempting to establish this alleged error by the circuit court. Specifically, petitioner fails to cite to a single legal authority that would entitle her to relief in this regard, which is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.[3] As this Court has held, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted).

Even more critically, petitioner fails to argue that the circuit court's findings of fact upon which termination was based were erroneous. Accordingly, petitioner is precluded from any relief on appeal by failing to identify any alleged error on the part of the circuit court in terminating her parental and custodial rights. Nevertheless, upon our review of the facts outlined above, we find that the circuit court had ample evidence upon which to base findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate a parent's parental and custodial rights upon these findings. *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that termination of parental rights, "the most drastic remedy" in abuse and neglect cases, may be employed "when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected"). Petitioner's failure to cite to any authority supporting her position is fatal to her claim, and we find that she is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 2, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:
Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

---

[3]Rule 10(c)(7) provides:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.